**\*NOT FOR PUBLICATION\***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA SLEAP, | |
| Plaintiff, | |
| v. | Civil Action No. 20-14002 (FLW) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | **OPINION** |
| Defendant. | |

**WOLFSON, Chief Judge:**

Lisa Sleap ("Plaintiff") appeals from the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant"), denying Plaintiff's application for disability under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record ("A.R."), the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence, and accordingly, the ALJ's decision **AFFIRMED**.

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, born on November 14, 1980, was 35 years old on her alleged disability onset date of September 5, 2016. (A.R. 15, 27.) On May 8, 2017, Plaintiff filed a Title II application for a period of disability due to Lyme disease, hyperthyroidism, arthritis, migraines, anxiety, and depression. (A.R. 15, 67.) The application was denied on August 2, 2017. (A.R. 1, 15.) Plaintiff then filed a written request for a hearing before an ALJ, which was held on May 9, 2019. (A.R. 15.) On May 23, 2019, the ALJ determined that Plaintiff was not disabled under the relevant

statutes.  (A.R. 28.)  Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on August 8, 2020.  (A.R. 1.)

### A.  Review of Medical Evidence

### i.  Medical Records

Plaintiff was first diagnosed with Lyme disease in June 2015, after experiencing several episodes of syncope.  (A.R. 242.)  After her initial course of antibiotics, she reported feeling better and lab results in July 2015 showed she was improving.  (*Id*.)  But by November 2015, she began to feel muscle aches and headaches.  (*Id*.)  From 2015 to 2017, Plaintiff was treated by Drs. Ernest B. Visconti, M.D., Lina Leykina, M.D., and Steven Streit, M.D. for symptoms attributed to her Lyme disease, including pain, stiffness, numbness, burning in her joints and muscles, fatigue, dizziness, insomnia, night sweats, and headaches.  (A.R. 246-50, 255-60, 272, 276-79, 336-51, 434-39.)   During this period, Plaintiff was treated with antibiotics, including Doxycycline, Amoxicillin, and Biaxi, as well as acupuncture.  (A.R. 23, 242-43, 389, 394-98, 408-09.)  Despite Plaintiff's complaints, her physical examinations at this time were generally normal.  (A.R. 248, 384, 403, 435.)

In April 2017, Dr. Streit, Plaintiff's initial treating physician for Lyme disease, referred Plaintiff for a blood test, which confirmed that Plaintiff was positive for Lyme disease.  (A.R. 64-65, 337.)  Dr. Streit also asked Plaintiff to complete a Lyme disease questionnaire.  (A.R. 338-39.)  Plaintiff's questionnaire stated that she had joint and muscle pain, fatigue, joint stiffness in her neck or back, headaches, blurry vision, dizziness, lightheadedness, confusion, difficulty concentrating, forgetfulness, and disturbed sleep.  (*Id*.)  In terms of diagnostic testing, Plaintiff stated that she had an MRI on her brain, and that the results were clear.  (A.R. 339.)  Plaintiff also noted that she had never been hospitalized for Lyme disease symptoms.  (*Id*.)

2

In July 2017, Dr. Ernst Ducena, M.D., performed a physical consultative examination of Plaintiff. (A.R. 368-370.) At the exam, Plaintiff complained of having increased joint pain and headaches since being diagnosed with Lyme disease. (A.R. 368.) At the exam, Dr. Ernst noted Plaintiff appeared alert and oriented, with no apparent distress. (*Id*.) Plaintiff's spine showed no tenderness and normal range of motion. (A.R. 369.) In her extremities, Plaintiff's upper and lower motor strength was 5/5, her knee jerk reflex was 4/4 bilaterally, and overall, her upper and lower extremities revealed a full range of motion with no pain or swelling. (*Id*.) Additionally, Plaintiff had normal hand dexterity, was able to get up from supine to sitting position with no pain or discomfort, and could flex both hips and extend both knees against resistance with no pain or discomfort. (A.R. 370.) Plaintiff's motor system, sensory, and reflex findings were also all normal. (*Id*.) Overall, Dr. Ducena found no limitations to sitting, standing, walking, lying down, hearing or speaking. (*Id*.) Dr. Ducena diagnosed Plaintiff with headaches, joint pain, a history of Lyme disease, and noted that her overall medical prognosis was good. (*Id*.)

In August 2017, Plaintiff underwent evaluation by Maryann Lee, M.D., at Staten Island Arthritis & Rheumatology. (A.R. 425-28.) Dr. Lee noted that Plaintiff had recently been given a Biaxin course for left sided pain, which provided relief. (*Id*.) In addition, Dr. Lee found positive apla, lower titer, and pain in her hands, knees, neck, and back. (*Id*.) Dr. Lee opined that Plaintiff's joint pain appeared to be related to patellar maltracking and left trochanteric bursitis, rather than arthritis due to Lyme Disease. (A.R. 425, 427.) Dr. Lee also noted Plaintiff started Bactrim for her chronic Lyme Disease. (A.R. 425.) Aside from these diagnoses, Plaintiff's internal systems and physical attributes were all found to be negative or normal. (A.R. 426-27.)

In February 2018, Plaintiff began seeing Dr. Lisa Zimmerman, M.D., for Lyme disease, and associated joint pains, heavy legs, and migraines. (A.R. 64-65, 468.) Upon examination, Dr.

Zimmerman found an enlarged thyroid, and swollen right and left nasal mucosa, but normal tone and muscle strength, normal gait, and regular heart rate and rhythm.  (A.R. 469.)  In April 2018, Plaintiff reported that her joint pain was almost all gone, although she still had foot and hand pain.  (A.R. 470.)  In June 2018, Plaintiff reported improvement in her Lyme disease symptoms since beginning herbal remedies recommended by Dr. Zimmerman.  (A.R. 472.)  In October 2018, Dr. Zimmerman noted that since she moved Plaintiff to a full herbal protocol, Plaintiff showed dramatic improvement in her symptoms, more so than when she used antibiotics.  (A.R. 474.)  In November 2018 and February 2019, Plaintiff reported that her Lyme symptoms remained much improved, although she still had some achiness around her menses.  (A.R. 477-78.)  Plaintiff was also treated for hyperthyroidism.  (A.R. 247.)  Dr. Zimmerman noted in April 2018 that Plaintiff was not taking any medication for her thyroid issue and that her thyroid stimulating hormone (TSH) had increased.  (A.R. 463, 470.)  Dr. Zimmerman started Plaintiff on an herbal remedy for her thyroid issue, known as strumatick.  (A.R. 470.)  In October 2018, Dr. Zimmerman reported that since taking strumatick, her TSH levels had decreased.  (A.R. 475.)

Regarding her mental health, Plaintiff reported anxiety and depression caused by the stress of her Lyme disease to both her doctors and mental health professionals.  (A.R. 272, 391-92, 440-41, 468, 472, 474.)  Plaintiff had only brief spurts of mental health treatment, first between October 2016 and November 2016, and then again between June 2018 and July 2018.  (A.R. 361-62, 440-41.)  In April 2018, Dr. Zimmerman treated Plaintiff with psy-stabile drops for her anxiety, which Plaintiff reported helped with her symptoms.  (A.R. 470.)

In July 2017, Plaintiff received a psychological consultative evaluation from David Lefkowitz, Ph.D.  (A.R. 364.)  Dr. Lefkowitz noted that Plaintiff's affect was appropriate and maintained eye contact during the meeting, while answering questions rapidly, openly, and

willingly.  (A.R. 365.)  Plaintiff's speech was coherent and relevant, and her thought processes were logical and goal directed.  (*Id.*)  Plaintiff also knew where she was, the present date, and recognized the people around her.  (*Id.*)  Plaintiff complained of memory lapses, but was able to recall three objects in five minutes, could spell world forward and backward, and was able to do ten steps of the serial 7s with one self-correction.  (*Id.*)  Dr. Lefkowitz opined that Plaintiff's concentration was good to fair, and her intellectual functioning, abstract thinking, proverbs, and similarities were excellent.  (*Id.*)  Further, her insight and judgment were good.  (*Id.*)  Dr. Lefkowitz diagnosed Plaintiff as having a major depressive disorder that has recurrent episodes but no psychotic features, as well as anxiety disorder.  (A.R. 366.)  Overall, the doctor found that Plaintiff tends to be extremely depressed and anxious, and that her Lyme disease makes her feel overwhelmed and withdrawn.  (*Id.*)  The doctor found that psychologically, Plaintiff showed signs of depression and anxiety due to her physical ailments.  (*Id.*)  Plaintiff noted to the doctor that she physically feels she is not able to work.  (*Id.*)

### ii.    Medical Opinion Evidence

In July 2017, Dr. O. Fassler, Ph.D., a state agency psychological consultant reviewed Plaintiff's medical record and found Plaintiff to be not disabled.  (A.R. 67-77.)  Dr. Fassler determined Plaintiff had mild limitations in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself, but no limitations in interacting with others.  (A.R. 73.)   Plaintiff's psychiatric history was viewed as unremarkable.  (A.R. 73.)  Dr. Fassler also stated that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.  (A.R. 75.)  As such, Dr. Fassler found that Plaintiff had the capacity to do medium exertional work.  (A.R. 76.)

In February 2019, L. Cylus, M.D., a state agency medical consultant, reviewed the record and determined that Plaintiff was capable of medium exertional work.  (A.R. 378.)  In making this assessment, Dr. Cylus noted that Plaintiff had been treated for Lyme disease with multiple negative serologies and one positive for two bands, Plaintiff had no joint deformity, no longitudinal history of frequent ER or hospital visits for migraines, and that she had full strength in her joints.  (A.R. 379.)  Overall, in combination, Dr. Cylus found that Plaintiff's impairments were not listing level. (*Id.*)

In May 2019, Dr. Zimmerman provided a medical source statement in which she opined that Plaintiff had chronic fatigue syndrome and Lyme disease.  (A.R. 484.)   As to Plaintiff's history of fatigue, Dr. Zimmerman stated that Plaintiff had three to four years of ongoing symptoms, was unable to perform daily living activities due to extreme fatigue, and had pains, headaches, and sleep issues.  (*Id.*)  Dr. Zimmerman also noted that Plaintiff had joint effusions and persistent reproducible muscle tenderness.  (A.R. 485.)  In light of these impairments, Dr. Zimmerman determined that Plaintiff could sit, stand, and walk for less than two hours per work day, rarely lift less than 10lbs, and that Plaintiff could never use her arms for reaching in front or overhead, nor use her hands to grasp or turn objects.  (A.R. 486-87.)  Dr. Zimmerman also stated that Plaintiff would be off task 25% or more of a work day and would likely be absent from work more than four days per month.  (A.R. 487-88.)

### B.  Review of Testimonial Evidence

#### i.  Plaintiff's Testimony

At the hearing, Plaintiff stated that she lived with her husband and two children.  (A.R. 41.) Plaintiff testified that she has a driver's license, and is able to drive short distances, but struggles to drive long distances because she gets dizzy and will sometimes lose focus and direction.  (*Id.*)

Plaintiff noted that because of her physical symptoms, she has someone help her do laundry, because she cannot carry or lift anything, but on her better days she can clean the house and cook dinner.  (A.R. 49-50.)  Plaintiff also testified that she finished college, and prior to her disability, she worked primarily as a first and second grade special education teacher.  (A.R. 43.)

When asked about her physical symptoms, Plaintiff explained that she experiences extreme exhaustion, and that she sleeps most of the day until she has to pick up her kids.  (A.R. 45.)  Plaintiff also stated that she has headaches, dizziness, and knee pain.  (*Id*.)  Plaintiff noted that she has difficulty walking up stairs, which was the reason why the principal at her former school gave her an elevator key to teach in her third-floor classroom.  (*Id*.)  Plaintiff stated that her overall symptoms have gotten worse over the years, including serious shoulder issues and insomnia.  (A.R. 47.)   Regarding her headaches, Plaintiff noted that she had an MRI, which showed that she had complex migraines.  (A.R. 48.)  Plaintiff stated that she has migraines once a month.  (A.R. 49.)  Although Plaintiff explained that she does have good days or weeks, her symptoms are unpredictable and do not have a consistent pattern.  (A.R. 50.)  To further help relieve her symptoms, Plaintiff has gone on gluten free, sugar free, and low dairy diets.  (*Id*.)

Plaintiff explained that she also has neuropathy, and that she has difficulty holding onto items, unloading the dishwasher, and difficulty walking.  (A.R. 53.)  Plaintiff also testified that she has a stiff neck, and that her elbows, wrists, and hands sometimes lock up.  (A.R. 54.)  These issues make it difficult for her to write or type, as well as reach above her head, although on good days she can put glasses into cabinets.  (A.R. 54-55.)  In terms of treatment, Plaintiff noted that Dr. Zimmerman has been treating her with homeopathic medications, including vitamin C and vitamin B infusions every other week to boost her immune system and help with the chronic fatigue.  (A.R. 45-46.)  Plaintiff had also previously taken amoxicillin, which did not relieve her symptoms, and

did acupuncture for neck pain, migraines, and dizziness.  (A.R. 45.)  But Plaintiff testified that she

has never attended physical therapy for her symptoms.  (A.R. 51.)

Regarding her mental health, Plaintiff testified that she is not currently receiving mental

health treatment.  (A.R. 47.)  Plaintiff noted that she has both long-term and short-term memory

loss, including problems with remembering words or tasks.  (A.R. 52.)

### ii.    Vocational Expert's Testimony

The Vocational Expert, Susan Howard ("VE"), began by classifying Plaintiff's past job as

a special education teacher as "teacher resource," which has a DOT code of 099.227-042, a specific

Vocational Preparation ("SVP") of 7, and is classified as a light exertion occupation.  (A.R. 57.)

The VE classified her work prior to being a special education teacher as "teacher, elementary

school," which has a DOT code of 092.227-010, an SVP of 7, and is classified as a light exertion

occupation.  (*Id*.)

The ALJ then proceeded to ask the VE the following hypothetical:

Let's assume that we have somebody with [Plaintiff's] same work history who is
restricted to medium level work, must avoid tasks involving a variety of instructions
or tasks but is able to understand, to carry out simple one or two step instructions
and is able to understand and carry out detailed but uninvolved written or oral
instructions involving several concrete variables that are from standardized
situations.  Could such an individual perform any of the work that [Plaintiff] had
performed in the past?

(A.R. 58.)  The VE replied, "No."  (*Id*.)  When the ALJ asked what work that hypothetical

individual could perform, the VE testified that this person could perform the work of: (1) "bagger,"

DOT code 920.687-014, which is a medium exertion job with an SVP of 2; (2) "cleaner,

industrial," DOT code of 381.687-018, which is a medium exertion job with an SVP of 2; and (3)

"laundry laborer," DOT code of 361.687-018, which is a medium exertion job with an SVP of 2.

(*Id*.)  The ALJ then asked if she changed the hypothetical such that the person could perform "a

full range of medium level work, could such an individual perform the work that Ms. Sleap had performed in the past?"  (A.R. 58-59.)  The VE replied, "Yes[.]"  (A.R. 59.)  The ALJ then asked a second hypothetical:

> [L]et's assume we have a sedentary exertional level with no overhead reaching, and the individual must avoid tasks involving a variety of instructions and tasks but is able to understand and carry out simple one or two step instructions, and is able to carry out detailed but uninvolved written or oral instructions involving several concrete variables in or from standardized situations.  Could such an individual perform any of the work [Plaintiff] performed in the past?

(A.R. 59.)  The VE replied, "No."  (*Id*.)  When asked if this hypothetical person could perform other work, the VE stated that he or she could, indeed, perform other work, and listed the following occupations: (1) "taper, circuit layout," DOT code 017.684-010, which is a sedentary exertion job with an SVP of 2; (2) "order clerk, food and beverage," DOT code 209.567-014, which is a sedentary exertion job with an SVP of 2; (3) and "cuff folder," DOT code 685.687-014, which is a sedentary exertion job with an SVP of 2.  (A.R. 59-60.)  The VE noted that this was a representative sampling of jobs, and that she would be able to identify more jobs if necessary.  (A.R. 60.)  The ALJ then posed a third hypothetical to the VE:

> Let's assume a sedentary exertional level.  The individual can sit, stand, and walk for less than two hours each during an eight-hour workday.  Would need shifting positions at will from sitting to standing and walking.  Would need unscheduled breaks during a workday about every hour.  Could rarely and about 5 percent of the time lift over ten pounds.  Can rarely, again, 5 percent of the time, twist, stoop, crouch, climb ladders, and stairs. Can never reach or grasp.  Can perform fine finger manipulations only 5 percent of the workday.  Would be off task as much as 25 percent of the time, and would likely miss as many as four or more days in a work month.  Could such an individual perform any of the work that [Plaintiff] has performed in the past?

(A.R. 61.)  The VE replied, "No."  (*Id*.)  When asked if there was other work this hypothetical person could perform, the VE stated that she would not be able to identify any alternate jobs for this person.  (A.R. 61-62.)

9

### C. ALJ Decision

On May 23, 2019, the ALJ issued a written decision analyzing whether Plaintiff satisfied her burden to demonstrate disability using the standard five-step process. (A.R. 15-28.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability. (A.R. 18.) At step two, the ALJ found that Plaintiff's chronic Lyme disease, hyperthyroidism, and arthralgia were severe impairments, but determined that Plaintiff's depressive disorder, anxiety disorder, and headaches were non-severe. (A.R. 18-20.) At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the relevant CFR. (A.R. 20.) Although there are no listing criteria specific to evaluating arthralgias or Lyme disease, the ALJ considered the effects on each body system included in the listings and found that the evidence showed that these impairments did not reach listing-level severity. (A.R. 21.) In so deciding, the ALJ focused particularly on listings 1.02, major dysfunction of a joint, and 14.09, inflammatory arthritis. (*Id.*)

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff can perform no overhead reaching. (*Id.*) The ALJ also stated that Plaintiff may perform one- or two-step instruction tasks and carry out "detailed but uninvolved" written or oral instructions involving several concrete variables in or from standardized situations, but must avoid tasks involving a variety of instructions. (*Id.*) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (A.R. 26.) At step five, the ALJ determined that given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (A.R. 27.)

## II.   <u>STANDARD OF REVIEW</u>

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations and citations omitted). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id*. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id*. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability.  *Id*. § 1382c(a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled.  *See* 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity."  *Id*. § 404.1520(a)(4)(i); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).  If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits.  *See id*. § 404.1520(b); *see also Bowen*, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities.  *Id*. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5.  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  *Id*. § 404.1522(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  *Id*. § 404.1522(b)(1).  A claimant who does not have a severe impairment is not considered disabled.  *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the

"Impairment List").   *Id*. § 404.1520(a)(4)(iii).   If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.   *See id*. § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5.   If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent.   *See id*. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.   *Id*.   An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.   *Williams*, 970 F.2d at 1186.   If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work.   20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.

If the claimant can perform past relevant work, the claimant is determined to not be disabled.   20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42.   The claimant bears the burden of demonstrating an inability to return to the past relevant work.   *Plummer*, 186 F.3d at 428.   Finally, if it is determined that the claimant is no longer able to perform his or her past relevant work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."   *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428.   This step requires the ALJ to consider the claimant's RFC, age, education, and past work experience.   20 C.F.R. § 404.1520(a)(4)(v).   The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant can perform work and not disabled.   *Id*.

III.     **PLAINTIFF'S CLAIMS ON APPEAL**

Plaintiff, first, maintains that the ALJ erred in finding that Plaintiff's headaches and mental conditions were not severe impairments.  (Pl. Br. at 2.)  Second, Plaintiff argues that the ALJ improperly ruled that Plaintiff's impairments did not meet a social security listing.  (Pl. Br. at 3-4.)  In particular, Plaintiff asserts that the ALJ should have found that Plaintiff's depression and anxiety meet listings 12.04 and/or 12.06, and that Plaintiff's Lyme disease meets listing 14.09.  (*Id*.)  Third, Plaintiff contends that the ALJ improperly rejected the medical opinions of Dr. Zimmerman, which Plaintiff states are consistent with, and supported by, the medical record.  (Pl. Br. at 4-9.)  Fourth, Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC, because the ALJ failed to address the amount of work Plaintiff would miss due to necessary absences and off-task time, as well as appropriately account for Plaintiff's subjective complaints.  (Pl. Br. at 7.)

A. **The ALJ's Determination That Plaintiff's Headaches and Mental Impairments Were Non-Severe Was Based on Substantial Evidence**

Plaintiff maintains that the ALJ erred at step two in finding that Plaintiff's headaches, depression, and anxiety were non-severe.  (Pl. Br. at 2-3.)  Plaintiff argues that these ailments were well documented in the medical record, and further, the psychiatric medical opinion evidence confirmed a diagnosis of depression and anxiety.  (*Id*.)  For this reason, Plaintiff contends that her headaches and mental impairments met the *de minimis* requirements for finding an impairment to be severe, and therefore, the ALJ should have found those specific impairments to be severe.  (Pl. Br. at 3.)  I disagree, and find that the ALJ's severity determinations were based on substantial evidence.

At step two, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5.

14

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have no more than a minimal effect on an individual's ability to work." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citation omitted).

Here, applying the appropriate reviewing standard, I find that the ALJ's severity determinations were extensive and supported by substantial evidence. Regarding Plaintiff's depressive and anxiety disorders, the ALJ found that these disorders, "considered singly and in combination, do not cause more than a minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe." (A.R. 18.)  In so deciding, the ALJ noted that while Plaintiff did complain of anxiety and depression symptoms, she received almost no formal mental health treatment, except for a few counseling sessions with a social worker, which Plaintiff voluntarily ceased.  (*Id*.)  Further, Plaintiff had no history of psychiatric hospitalizations, nor had she been prescribed psychotropic medications.  (*Id*.)  Moreover, the ALJ pointed out that Plaintiff can drive, go out alone, handle her finances, play with her children, and shop online, among other things.  (*Id*.)  The ALJ also found that the psychological consultative examinations indicated Plaintiff's mental health impairments were non-severe.  (A.R. 19.)  Dr. Lefkowitz's report, which the ALJ found persuasive, stated that Plaintiff was appropriate, had logical and goal-directed thought processes, good to fair concentration, and excellent intellectual functioning and abstract thinking.  (A.R. 18.)   In the ALJ's view, this examination supported a finding that Plaintiff was not significantly limited by her depression and anxiety.  (A.R. 19.) Furthermore, the ALJ explained that this report was consistent with the record as a whole, which revealed normal mental status exams and little mental health treatment overall.  (*Id*.)  The ALJ also considered Dr. Fassler's consultative examination, which found, after noting that Plaintiff

lacked psychiatric hospitalization or treatment, that "[f]rom a psych perspective, [the] totality of the clinical evidence support[s] mild limitations" and a "non-severe impairment." (A.R. 73.) In finding Plaintiff's mental impairments non-severe, the ALJ also gave detailed consideration to each of the four broad areas of mental functioning set out in Social Security regulations for evaluating mental disorders, and consistent with Dr. Fassler's opinion, determined that Plaintiff had only mild limitations in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself, but no limitations in interacting with others. (A.R. 19-20.)

Regarding Plaintiff's headaches, the ALJ considered Plaintiff's hearing testimony, mental status examinations, and the state medical consultant opinions in finding Plaintiff's headaches to be non-severe. (A.R. 20.) Specifically, Plaintiff testified that she had headaches that lasted for a day or two, but she also testified that she does not take any medication for her headaches other than over-the-counter Excedrin. (*Id.*) The ALJ also noted that Plaintiff's mental status examinations revealed that she was alert and oriented, and that state medical consultants concluded that Plaintiff's headaches were non-severe. (*Id.*)

While Plaintiff's briefs cite some evidence, such as consistent reporting of headaches and a consultative report that noted that Plaintiff was depressed and anxious, that may differ from the ALJ's ultimate severity determinations, "[my] inquiry is not whether the ALJ could have reasonably made a different finding based on this record. Rather, [I] must review whether the ALJ's actual findings are supported by substantial record evidence." *Simmonds*, 807 F.2d at 58. In light of the ALJ's examination, the ALJ's decisions as to Plaintiff's headaches and mental impairments are clearly supported by "more than a mere scintilla" of evidence, and as such, are based on substantial evidence. *McCrea*, 370 F.3d at 360.

**B.  The ALJ's Step Three Findings Were Supported by Substantial Evidence**

Plaintiff argues, at step three, that the ALJ erred in finding that Plaintiff's impairments do not meet or equal a Social Security Administration ("SSA") listing.  First, Plaintiff asserts that, while Lyme disease is not a listed impairment by the SSA, her depression and anxiety stemming from Lyme disease symptoms satisfy listings 12.04 and/or 12.06, and the ALJ failed to address these listings.  (Pl. Br. at 3-4.)  Second, Plaintiff maintains that her Lyme disease met listing 14.09D, because Plaintiff claims she has severe fatigue and malaise, as well as a marked level of limitation in daily activities or completing tasks on time due to deficiencies in concentration, persistence, or pace.  (Pl. Br. at 4.)  I find that the ALJ's step three decisions were supported by substantial evidence.

At step three, the ALJ was required to consider each of Plaintiff's individual conditions in determining whether a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 was satisfied.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  In addition, if Plaintiff has "a combination of impairments, no one of which meets a listing," the regulations required the ALJ to "compare [the claimant's] findings with" other potential "analogous listed impairments."  *See* 20 C.F.R. § 404.1526.

To begin, the ALJ did not err by failing to analyze whether Plaintiff's mental impairments met listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). Social Security regulations only require the ALJ to consider whether an applicant's mental impairments meet, or are equivalent in severity to a listed mental disorder *if* the ALJ, first, finds the applicant's mental impairment to be severe at step two.  *See* C.F.R. § 404.1520a(d)(2) ("If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder."); *Maddaloni v. Comm'r of Soc. Sec.*, 340 F.

App'x 800, 802 (3d Cir. 2009) ("If the claimant has a severe mental impairment at step two, subsection (d)(2) directs that at step three the medical findings and ratings of the functional limitations must be further evaluated by comparing them to the criteria of the appropriate listed mental disorder in Appendix 1.")  As explained *supra*, the ALJ appropriately considered Plaintiff's depression and anxiety at step two, and determined, based on substantial evidence, that these impairments were non-severe.  (A.R. 18-20.)  Therefore, the ALJ had no duty to determine whether Plaintiff's mental impairments met or were equivalent in severity to listings 12.04 and 12.06.

Second, the ALJ's finding that Plaintiff's Lyme disease does not medically equal listing 14.09D was also based on substantial evidence.  Listing 14.09D requires a finding of:

> [r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: 1. Limitation of activities of daily living. 2. Limitation in maintaining social functioning. 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09D6.  With regard to Plaintiff's argument that she experienced severe fatigue and malaise, the ALJ considered Plaintiff's subjective complaints as to these symptoms from her Adult Function Report and testimony from the hearing, but found them not entirely consistent with the medical evidence on the record.  (A.R. 22-23.)  Among other evidence, the ALJ noted that two comprehensive physical evaluations by Dr. Ducena and Dr. Lee "failed to reveal any significant physical findings, despite the claimant's allegations of debilitating pain and fatigue."  (A.R. 24.)  Further, the ALJ explained that Plaintiff's more recent records with Dr. Zimmerman demonstrate that her condition was not as severe as Plaintiff alleged, since Plaintiff had unremarkable physical examinations and that her course of treatment consisting of herbal remedies indicated "dramatic improvement" in Plaintiff's symptoms.  (*Id.*)  Furthermore, the ALJ explained that Plaintiff is able to prepare simple meals, drive, go to church, and is raising

two young children, which includes picking them up and dropping them off at school, and going to birthday parties.  (A.R. 24-25.)

Additionally, regarding Plaintiff's argument that she has marked limitations in activities of daily living and completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace, the ALJ considered Plaintiff's subjective complaints and also found the medical evidence not to be entirely consistent with these complaints.  (A.R. 22-23.)  As to limitations in daily living activities, aside from the activities already discussed in the previous paragraph, the ALJ noted that despite Plaintiff's protestations that she would be too weak to sustain full-time employment, her physical examinations were generally unremarkable and her treatments have been both conservative and effective.  (A.R. 22-23.)  Further, Dr. Ducena concluded that Plaintiff had no limitation sitting, standing, walking, lying down, hearing, or speaking.  (A.R. 25.)  Plaintiff's doctors at Staten Island Arthritis and Rheumatology found that Plaintiff had no swelling, tenderness, effusion, or limited range of motion in her hands, shoulders, elbows, hips, feet, or ankles.  (A.R. 24.)  The ALJ also noted that despite Plaintiff's symptoms, she had no diagnostic imaging done of her joints, she had never undergone physical therapy, and Dr. Lee, who conducted a physical evaluation, only recommended strengthening and stretching exercises.  (*Id*.)  As to her ability to complete tasks due to deficiencies in concentration, persistence, or pace, the ALJ specifically found that Plaintiff did not have a marked limitation, but rather, had only a mild limitation.  (A.R. 19.)  The ALJ explained that during consultative examinations, Plaintiff's concentration was good to fair, she was able to perform auditory digit span of five digits forward and in reverse, she could perform calculations, and she was able to do ten steps of serial sevens with one self-correction.  (A.R. 19-20.)  Moreover, the ALJ stated that Plaintiff is able to shop

online, pay bills, handle her own finances, play with her children, watch television, and attend school functions.  (A.R. 20.)

For these reasons, the ALJ's finding that listing 14.09D was not satisfied was based on substantial evidence.  (A.R. 21.)

### C. The ALJ Properly Evaluated the Persuasiveness of Dr. Zimmerman's Opinion

Plaintiff maintains that the ALJ failed to follow Social Security regulations in finding that Dr. Zimmerman's medical opinion was unpersuasive.  (Pl. Br. at 4.)  In particular, Plaintiff asserts that the ALJ erred because Dr. Zimmerman is a Lyme disease specialist who has a long-standing treatment relationship with Plaintiff, and her medical opinions were supported by the medical evidence and consistent with Plaintiff's subjective complaints.  (Pl. Br. at 5-6.)  In that connection, Plaintiff argues that the ALJ improperly mischaracterized Dr. Zimmerman's treatment records, and ignored other tests supporting Dr. Zimmerman's findings, and as such, remand is required. (Pl. Br. 5-8.)  I disagree, and find that the ALJ properly considered Dr. Zimmerman's opinion consistent with Social Security regulations.

When analyzing a medical opinion, SSA regulations require the ALJ to determine the persuasiveness of that opinion based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other facts that tend to support or contract a medical opinion or prior administrative medical finding.  C.F.R. § 404.1520c(c). Importantly, the regulations emphasize that the "factors of supportability and consistency are the most important factors" in determining persuasiveness.  C.F.R. § 404.1520c(b)(2).  To determine supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical

finding(s) will be." C.F.R. § 404.1520c(c)(1). To determine consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." C.F.R. § 404.1520c(c)(2). Notably, even if a treating physician's opinion conflicts with the medical record, the ALJ may accord that opinion less weight, or even reject it outright, so long as a reasonable explanation is given. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *Ramos v. Colvin*, No. 14-3971, 2016 WL 1270759, at *5 (D.N.J. Mar. 31, 2016) ("An ALJ can reject a treating physician's opinion . . . where the opinion is . . . inconsistent with other substantial evidence of record." (citation and internal quotation marks omitted)). Ultimately, it is within the province of the ALJ to decide which physician to credit, but that task must be performed by considering all of the evidence. *Plummer*, 186, F.3d at 429.

Here, the ALJ appropriately considered Dr. Zimmerman's medical opinion in accordance with relevant regulations, and determined that Dr. Zimmerman's opinion was unpersuasive. (A.R. 26.) Specifically, the ALJ noted that Dr. Zimmerman opined that Plaintiff could sit, stand, and walk for less than two hours per work day, rarely lift less than 10lbs, and that Plaintiff could never use her arms for reaching in front or overhead, nor use her hands to grasp or turn objects. (*Id*.) Further, the ALJ discussed Dr. Zimmerman's findings that Plaintiff had joint effusions, persistent reproducible muscle tenderness, and that Plaintiff had "extreme limitations" in her ability to function due to fatigue. (*Id*.) After analyzing the record, the ALJ determined that Dr. Zimmerman's findings were "not well-supported" and "inconsistent with the evidence in the record[.]" (*Id*.) Regarding supportability, citing to Dr. Zimmerman's treating records, the ALJ found that despite Dr. Zimmerman's statement that Plaintiff had joint effusions and persistent reproducible muscle tenderness, repeated physical examinations were normal, and no effusion or

joint tenderness was noted during these examinations.  (*Id*.)  As to Plaintiff's purported extreme limitations in ability to function, the ALJ explained that Plaintiff's treatment notes between February 2018 and February 2019, suggested continuous improvement, which included statements from Dr. Zimmerman that Plaintiff's joint pains were almost gone, Plaintiff had more energy, and that after beginning a full herbal protocol, Plaintiff demonstrated a "dramatic improvement."  (*Id*.)

In terms of consistency, the ALJ found Dr. Zimmerman's opinion to be inconsistent with the record as a whole due to a "lack of diagnostic testing substantiating her complaints of joint pain," as well as Plaintiff's regularly unremarkable physical examinations. (*Id*.)  The ALJ cited Dr. Ducena's examination, where Dr. Ducena found Plaintiff had no limitations in sitting or standing, had normal range of motion, strength, reflexes, as well as no swelling in Plaintiff's joints. (A.R. 25.)  The ALJ also noted that Dr. Lee's physical evaluation found Plaintiff's examinations to be generally unremarkable.  (A.R. 24.)  Indeed, although Dr. Lee diagnosed Plaintiff with Lyme disease and pain in an unspecified joint, Dr. Lee recommended only strengthening and stretching exercises for Plaintiff's pain.  (*Id*.)

Plaintiff disagrees with the ALJ, and argues that the medical record does, in fact, support Dr. Zimmerman's opinion.  First, Plaintiff takes issue with the ALJ's statement that there is a "lack of diagnostic testing substantiating [Plaintiff's] complaints of joint pain"[1] by arguing that the ALJ

---

[1] The Court notes that Plaintiff's brief inappropriately alters the meaning of this statement to fit her argument.  Plaintiff cuts off the ALJ's statement, without proper citation, by adding a period at the end of the word "complaints." (Pl. Br. at 8 ("However, the ALJ also claimed there was a 'lack of diagnostic testing substantiating her complaints.'"); Pl. Reply Br. at 10 ("The ALJ's claim that there was a 'lack of diagnostic testing substantiating [Plaintiff's complaints" was improper where . . .'").)  However, the ALJ's full phrase clearly reads that there is a lack of diagnostic testing substantiating Plaintiff's "complaints *of joint pain*."  (A.R. 26 (emphasis added).)  This is noteworthy because the ALJ's actual statement is significantly narrower than Plaintiff's quoted statement in her briefing, which, incorrectly, implies that the ALJ specifically found that there was insufficient diagnostic testing substantiating *any* of Plaintiff's subjective complaints.

erred in denying Plaintiff's subpoena request to obtain additional records from Dr. Streit, which Plaintiff claims contain diagnostic tests confirming the existence of her "conditions." (Pl. Reply Br. at 10.) As Plaintiff acknowledges, the SSA subpoena regulation is permissive, and provides that, "when reasonably necessary," an ALJ "may" subpoena additional records. 20 C.F.R. § 404.950(d). At the hearing, Plaintiff explained that Dr. Streit was her original Lyme disease doctor, but Plaintiff sought a change in treatment with Dr. Zimmerman because Dr. Streit's treatment centered around aggressive use of antibiotics, which often amplified her pain. (A.R. 64-65.) The ALJ denied Plaintiff's subpoena request as he did not find that there was "anything that would be gained" from acquiring these records. (A.R. 65.) On this appeal, Plaintiff has failed to explain how that decision is erroneous. Plaintiff states that the records she seeks from Dr. Streit confirm her "conditions," but Plaintiff does not point out that these records contain specific diagnostic testing substantiating her *joint pain*, which is the only type of testing the ALJ stated was lacking. (A.R. 26.) Furthermore, having reviewed the record, there is no indication that Dr. Streit performed diagnostic testing regarding joint pain. As such, because Plaintiff "bears the burden of proof at steps one through four," and in light of her vague argument, Plaintiff has failed to substantiate her position that the ALJ was incorrect in disallowing her from obtaining Dr. Streit's records. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).

Next, Plaintiff points to a variety of cherry-picked statements describing Plaintiff's symptoms in the treatment notes of Drs. Visconti, Leykina, Streit, and Lee, and claims that these statements are proof that Dr. Zimmerman's findings were consistent with and supported by the record. (Pl. Br. at 4-7; Pl. Reply Br. at 5-7.) As an initial matter, these statements are largely subjective complaints by Plaintiff included in the treatment notes by the doctors; for example, claims of pain, stiffness, anxiety, fatigue, headaches, and dizziness, among others. (*Id.*) But "the

mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into object findings or a medical opinion." *David K. v. Kijakazi*, No. 20-12419, 2022 WL 225451, at *8 (D.N.J. Jan. 26, 2022) (citing *Morris v. Barnhart*, 78 Fed. App'x 820, 824-25 (3d Cir. 2003)).  Most importantly, the ALJ expressly considered each of these physicians' treating notes in the decision, and determined that Dr. Zimmerman's medical opinion was unsupported and inconsistent with the overall weight of the medical evidence.  (A.R. 21-26.)  Therefore, because the ALJ appropriately considered all of the available evidence in the record, even if there "is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied," I am required to affirm the ALJ's findings.  *Johnson v. Comm'r of Soc. Sec.*, 497 Fed. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds*, 807 F.2d at 58).  Here, I find that the ALJ's decision regarding the persuasiveness of Dr. Zimmerman's opinion was based on substantial evidence.

### D. Substantial Evidence Supports the ALJ's RFC Finding

Plaintiff argues that the ALJ incorrectly found in Plaintiff's RFC that Plaintiff was capable of performing sedentary work.  (Pl. Reply Br. 11-14.)   Specifically, Plaintiff notes that Dr. Zimmerman indicated that Plaintiff would miss more than four days of work per month due to the severity of her conditions and would be off task 25% or more, and that the VE testified that absences of more than 7-9 days per year or being off task more than 10% would not be tolerated by any employers. (Pl. Reply Br. at 12-13.)  Considering these statements in combination, Plaintiff argues that the ALJ failed to consider Plaintiff's need for off-task time in her RFC, and if the ALJ had considered this limitation, the ALJ would have found that there no jobs available for Plaintiff in the national economy.  (Pl. Reply Br. at 13.)

"[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a). When a case is brought to an administrative hearing, the ALJ "is responsible for assessing [] residual functional capacity." 20 C.F.R. § 404.1546(c). This means that the "ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In making an RFC determination, "the ALJ must consider all evidence before him," and, although the ALJ may weigh the credibility of the evidence, he must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Further, "[w]here the ALJ's findings of fact are supported by substantial evidence, [district courts] are bound by those findings, even if [the courts] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (internal quotation marks and citation omitted).

The ALJ's RFC determination that Plaintiff could perform sedentary work was based on substantial evidence. Plaintiff's RFC argument stems from Dr. Zimmerman's medical opinion that Plaintiff would be off task 25% or more of the time and would likely be absent from work more than four days per month. (A.R. 487-488.) As an initial matter, the ALJ, "not treating or examining physicians[,] . . . must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361. In that connection, "the ALJ need only include in the RFC those limitations which he finds to be credible[,]" and does not need to consider medical evidence he finds not to be credible. *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 149 (3d Cir. 2007). As discussed in detail *supra*, the ALJ determined Dr. Zimmerman's opinion to be unsupported by, and

inconsistent with, the record, and therefore, unpersuasive.  (A.R. 26.)  As such, the ALJ's decision to discount Dr. Zimmerman's opinion as to off-task time and absences was based on substantial evidence.

Moreover, the ALJ appropriately analyzed the record to determine Plaintiff's limitations at step four.  As explained *supra*, the ALJ discussed Plaintiff's record in great detail, including the "medical evidence of record, the objective medical findings, the claimant's inconsistent, conservative course of treatment, medical opinion evidence, reported activities of daily living, hearing testimony, and [a] thorough review of the evidence of record."  (A.R. 26.)  Despite finding that Plaintiff's subjective complaints were inconsistent with the medical evidence, the ALJ gave Plaintiff every benefit by accounting for those complaints in fashioning the RFC.  (A.R. 24-25.) Specifically, even though the medical evidence did not tend to support a sedentary RFC, the ALJ, nonetheless, found that "viewing the evidence in the light most favorable to the claimant, on account of her pain and fatigue resulting from her impairments, her [RFC] limits her to no more than sedentary work with no overhead reaching."[2]  (A.R. 25.)  Further, although the ALJ did not find any of Plaintiff's mental impairments to be severe at step two, in order to "account for the mental effects of [Plaintiff's] fatigue," the ALJ required that Plaintiff "avoid tasks involving a variety of instructions or tasks," and limited Plaintiff to carrying out "simple one- or two- step instructions and . . . 'detailed but uninvolved' written or oral instructions involving several concrete variables in or from standardized situations."  (A.R. 25.)  The ALJ also expressly discussed Plaintiff's hyperthyroidism, and explained that the RFC accounted for this impairment through "her limitations to unskilled sedentary work with no overhead reaching."  (A.R. 25.)

---

[2] In fact, both state medical consultants, Dr. Fassler and Dr. Cylus, opined that Plaintiff could perform work at a medium exertional level.  (A.R. 25, 76.)

As such, the ALJ appropriately considered the entirety of the record, including both the medical record and Plaintiff's subjective complaints, to formulate the limitations of Plaintiff's RFC.  For this reason, I find that Plaintiff's RFC was based on substantial evidence.

**IV.   <u>CONCLUSION</u>**

For the reasons set forth above, the ALJ's decision is **AFFIRMED**. An appropriate order shall follow.


Date:   February 16, 2022                    /s/ Freda L. Wolfson
                                             Freda L. Wolfson
                                             U.S. Chief District Judge